EAGAN AVENATTI, LLP
Michael J. Avenatti, Bar No. 206929
mavenatti@eaganavenatti.com
Scott H. Sims, Bar. No. 234148
ssims@eaganavenatti.com
450 Newport Center Drive, Second Floor
Newport Beach, CA 92660
Tel:   (949) 706-7000
Fax:   (949) 706-7050

OSBORN MACHLER
Simeon J. Osborn, Washington Bar No. 14484
(Pro Hac Vice To Be Filed)
sosborn@osbornmachler.com
2125 Fifth Avenue
Seattle, WA  98121
Tel:   (206) 441-4110
Fax:   (206) 441-4220

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA OSTEGREN, as the Personal Representative of the Estate of John Winkler and individually; and MARK WINKLER, individually,<br><br>        Plaintiffs,<br><br>        vs.<br><br>LOS ANGELES SHERIFF'S DEPARTMENT, a division of the County of Los Angeles; COUNTY OF LOS ANGELES, a public entity; MICHAEL FAIRBANK, an individual; BYRON HOLLOWAY, an individual; GERARDO BALDIVIA, an individual; and DOES 1 through 50, Inclusive,<br><br>        Defendants. | Case No.    14-9453<br><br>**COMPLAINT FOR:**<br><br>**(1) Violations of  42 U.S.C. § 1983**<br>**(2) Negligence**<br>**(3) Cal. Civil Code § 52.1**<br>**(4) Violations of 42 U.S.C. § 1983**<br><br>**DEMAND FOR JURY TRIAL** |

### INTRODUCTION

1.      This case relates to the tragic death of John Winkler, who was fatally shot and wounded by one or more deputies of the Los Angeles Sheriff's Department, despite the fact that he was unarmed, made no offensive moves toward the deputies, and a woman in his apartment complex had previously shown the deputies a picture of him and identified him as <u>not</u> dangerous.

### PARTIES

2.      Plaintiff Lisa Ostegren is the mother of John Winkler, deceased, and the personal representative of the Estate of John Winkler.  She brings causes of action one through three as the personal representative of the Estate of John Winkler and cause of action four individually.  Plaintiff Mark Winkler is the father of John Winkler and brings cause of action four individually.   John Winkler was a resident of the State of California at the time of his death.  Lisa Ostegren and Mark Winkler are citizens of the State of Washington.

3.      Defendant County of Los Angeles ("COLA") is a legal and political entity established under the laws of the State of California, with all the powers specified and necessarily implied by the Constitution and laws of the State of California and exercised by a duly elected Board of Supervisors, an appointed county manager and Sheriff, and their agents and officers.

4.      Defendant Los Angeles Sheriff's Department ("LASD" or "Sheriff's Department"), at all relevant times set forth herein, was a public agency and/or division of the County of Los Angeles.

5.      Defendants Michael Fairbank, Byron Holloway and Gerardo Baldivia were, at all relevant times, LASD deputies employed by the County of Los Angeles and/or LASD and acting within the course and scope of their employment and under color of state law.

6.      The true names of Does 1 through 50 are presently unknown to Plaintiff, who therefore sues each of these Defendants by such fictitious names.   Upon

ascertaining the true identity of a Defendant Doe, Plaintiff will amend this Complaint or seek leave to do so by inserting the true name in lieu of the fictitious name.  Plaintiffs are informed and believe and thereon allege, that Does 1-25 are deputies or employees of the County of Los Angeles and/or LASD and is in some manner responsible for the injuries and damages herein alleged and that each Defendant Doe herein pursued the course of conduct herein alleged while acting in the scope and course of his/her employment and under color of state law.  Defendants Michael Fairbank, Byron Holloway, Gerardo Baldivia and Does 1 through 25 are collectively referred to herein as the "Defendant LASD Deputies."

## JURISDICTION AND VENUE

7.     Pursuant to 28 U.S.C. §§ 1331 and 1343 this Court has original jurisdiction over Plaintiffs' first and fourth causes of action for violations of 28 U.S.C. § 1983, which seek redress for violations of rights under the United States Constitution.  This Court has supplemental jurisdiction over the remaining state law causes of action (causes of action two and three) pursuant to 28 U.S.C. § 1367, as such causes of action are so related to claims in the first and fourth causes of action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

8.     This Court has personal jurisdiction over COLA and LASD because they are governmental entities operating within the County of Los Angeles, State of California.  The Court has personal jurisdiction over the Defendant LASD Deputies because they reside in the State of California and/or are employed by governmental entities operating within the County of Los Angeles and/or the State of California.

9.     Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1391 because the acts complained of arose in this District.

## GOVERNMENTAL CLAIM SERVED AND DENIED

9.     Prior to filing this action, Plaintiff complied with the California Tort Claims Act by serving a claim for damages on the Los Angeles County Board of Supervisors on April 29, 2014.  No action was taken on the Claim within 45 days of submittal and thus the claim was deemed denied by operation of law.

## FACTUAL BACKGROUND

10.     On April 7, 2014 at approximately 9:00 PM, Mr. Winkler went to the apartment of his friend Liam Mulligan, who lived at 939 Palm Avenue, Apartment #201 in West Hollywood, California. Another friend, Chris Potter, was also present as was another resident of the apartment, Sarah.

11.     At approximately 9:15 PM on April 7, Alex McDonald, who was Mr. Mulligan's roommate, came into the apartment building and knocked on the door of Apartment #204.  Mr. McDonald knew the residents of Apartment #204 and when the door was opened, he pushed his way in.  Mr. McDonald was acting and speaking very strangely and scared the residents of Apartment #204, Ms. Smatt and Ms. Shakoor.  Mr. McDonald took a large kitchen knife from the kitchen, and then Ms. Smatt barricaded herself in the bathroom and called 911.  The other resident, Ms. Shakoor, ran down the hallway and out into the street and met Defendant LASD Deputy who was responding to the 911 call. Ms. Shakoor told the Defendant LASD Deputy what had happened and showed the Deputy a picture of Alex McDonald that she had on her phone. The information provided by Ms. Shakoor was never relayed or communicated in any way to the other Defendant LASD Deputies who were being deployed throughout the apartment building and ultimately shot and killed Mr. Winkler.

11.     When Ms. Shakoor ran away from Alex McDonald, Mr. McDonald then went to Apartment #202 and tried to force his way in.  Mr. McDonald also knew the residents of this apartment. Mr. McDonald was turned away and the residents of this apartment also called 911.

**COMPLAINT**

12.    Mr. McDonald then went to the community balcony off the lobby (which is directly in front of his Apartment #201) and climbed around a dividing wall to get to the balcony of Apartment #201.  Mr. McDonald came in through the sliding glass door of Apartment #201 and entered into the living room where he saw his roommate, Mr. Mulligan, along with Mr. Potter and Mr. Winkler sitting on couches in the front room. Mr. McDonald then sat next to Mr. Potter on the couch and began to act and speak very strangely.  After a number of interactions, Mr. McDonald suddenly sliced Mr. Potter's thigh and then stabbed him in the same thigh.

13.    Concurrent with the activity in Apartment #201, Defendant LASD Deputies arrived at the scene and set-up in the lobby of the second floor of 939 Palm. There were multiple Defendant LASD Deputies on the scene as well as an LASD helicopter hovering overhead.  One Defendant LASD Deputies contacted the female residents of Apartment #202.  One resident of Apartment #202 showed a Defendant LASD Deputy pictures of both Mr. McDonald and Mr. Winkler on her cell phone, and identified Mr. McDonald as the man who attempted to force his way into Apartment #202.  The Defendant LASD Deputy took the resident's cell phone and showed the photo of Mr. McDonald to the other Defendant LASD Deputies in the lobby and said "Alex [McDonald] is our guy."  The photos showed clearly showed Mr. McDonald with black hair and Mr. Winkler with blond hair. The Defendant LASD Deputies were also given a description of Alex McDonald:  "Tall, black hair, black shirt, black backpack, khaki shorts."

14.    After the Defendant LASD Deputies saw the picture of Mr. McDonald in the lobby, there was a plan made to rush the door of Apartment #201 because no one would come to the door.  This was during the time Mr. McDonald began to stab Mr. Potter in the leg.  Mr. Mulligan and Mr. Winkler then rushed Mr. McDonald in an effort to save their friend, Mr. Potter.  During the scuffle that ensued, Mr. Mulligan was cut on the neck by Mr. McDonald. Mr. Winkler grabbed Mr. Mulligan and applied pressure to the wound as he pushed Mr. Mulligan to the door.  Mr. Winkler opened the door inward

to allow himself and Liam Mulligan to escape, when immediately, suddenly and without warning, Defendant LASD Deputies Michael Fairbank, Byron Holloway and Gerardo Baldivia opened fire and shot Mr. Mulligan in the thigh.  Mr. Mulligan fell to the ground and Mr. Winkler jumped over him with his hands above his head.  When Mr. Winkler jumped over the wounded Mr. Mulligan, he was shot several times by Defendant LASD Deputies Fairbank, Holloway and Baldivia.  Mr. Winkler ultimately died from the wounds he received from being shot by Defendant LASD Deputies Fairbank, Holloway and Baldivia.

15.    At the time they were shot, Mr. Winkler and Mr. Mulligan were unarmed. Further, Mr. Mulligan (the first person out of the door) was wearing a white polo shirt. Mr. Winkler was rescuing Liam Mulligan and fleeing for his life at the time he was fatally shot by Defendant LASD Deputies .  The Defendant LASD Deputies' conduct was not reasonable under the circumstances, including but not limited to the fact that prior to using deadly force (a) a resident of Apartment #204 showed an LASD deputy pictures of the black haired Mr. McDonald and the blond haired Mr. Winkler and identified Mr. McDonald, not Mr. Winkler, as the danger and reason 911 had been called; (2) the LASD deputy shared the pictures with his colleagues and stated "Alex [McDonald] is our guy"; and (3) Mr. Winkler was unarmed and made no offensive moves towards the LASD deputies when he exited Apartment #201 while trying to save Mr. Mulligan.

**FIRST CAUSE OF ACTION**
**(Violation of 28 U.S.C. § 1983)**
**(Against All Defendants)**

16.    Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 15 of this Complaint, and incorporate the same herein by reference.

17.    Based on the facts set forth above in paragraphs 1 through 15, Defendants' conduct constitutes the intentional and/or reckless use of excessive force against John Winkler, and John Winkler was deprived of his constitutional due process rights under

the United States Constitution, including under the Fourteenth Amendment, including his right to be free from excessive force and right to free from deprivation of life and liberty.

18.   The Defendant LASD Deputies acted, or purported to act, in the performance of their official duties.

19.   Defendants LASD and/or COLA failed to adequately train and/or supervise the Defendant LASD Deputies and that failure to train  and/or supervise amounted to a deliberate indifference to the rights of persons with whom the Defendant LASD Deputies come into contact.  The failure to train and/or supervise amounts to a de facto custom, practice or policy of LASD and/or COLA allowing deputies to use excessive force.

20.   The Defendant LASD Deputies' conduct was a proximate and legal cause of Mr. Winkler's death and violation of his constitutional rights.

21.   Defendants LASD and/or COLA's failure to train was a moving force and cause behind the violation of Mr. Winkler's constitutional rights and his death.

22.   Plaintiffs are entitled to damages on behalf of the estate as John Winkler suffered injury as a result of Defendants' violations of Mr. Winkler's constitutional rights, including but not limited economic damages and non-economic damages for to pain and suffering and the loss of enjoyment of life.  The exact amount of damages will be subject to proof at trial.

23.   The aforementioned acts and omissions of the Defendant LASD Deputies were committed by each of them knowingly, willfully and/or maliciously, with the intent to harm, injure, vex, harass and/or oppress Mr. Winkler and/or with a conscious disregard of Mr. Winkler's rights and by reason thereof, Plaintiffs seek punitive and exemplary damages from Defendant LASD Deputies, and each of them, according to proof at the time of trial.

**SECOND CAUSE OF ACTION**
**(Negligence)**
**(Against All Defendants)**

24.     Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 15 of this Complaint, and incorporate the same herein by reference.

25.     The Defendant LASD Deputies owed Mr. Winkler a duty of care, including but not limited to a duty to act reasonably when using deadly force.

26.     The Defendant LASD Deputies breached their duty of care to Mr. Winkler, including but not limited to by way of not acting reasonably when using deadly force against him.

27.     The Defendant LASD Deputies' negligence was the proximate and legal cause of Mr. Winkler's death.

28.     Plaintiffs are entitled to compensatory and other damages from the Defendant LASD Deputies according to proof at the time of trial.

29.     The Defendant LASD Deputies were acting in the course and scope of their employment as employees of the County of Los Angeles and/or LASD. Accordingly, the County of Los Angeles and the LASD are vicariously liable for the negligence of the Defendant LASD Deputies' which was proximate and legal cause of Mr. Winkler's death, and thus Plaintiff is entitled to compensatory and other damages from the County of Los Angeles and/or LASD according to proof at the time of trial.

30.     Defendants County of Los Angeles and/or LASD had a duty of care to act reasonably when employing, retaining, training, supervising and/or disciplining the Defendant LASD Deputies.  Defendants County of Los Angeles and/or LASD breached that duty of care, which was a proximate and legal cause of Mr. Winker's death, and thus Plaintiffs are entitled to compensatory and other damages from the County of Los Angeles and/or LASD according to proof at the time of trial

31.     The aforementioned acts and omissions of the Defendant LASD Deputies were committed by each of them knowingly, willfully and/or maliciously, with the

intent to harm, injure, vex, harass and/or oppress Mr. Winkler and/or with a conscious disregard of Mr. Winkler's rights and by reason thereof, Plaintiffs seek punitive and exemplary damages from Defendant LASD Deputies, and each of them, according to proof at the time of trial.

### THIRD CAUSE OF ACTION
### (Cal. Civil Code §52.1)
### (Against All Defendants)

32.    Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 15 of this Complaint, and incorporate the same herein by reference.

33.    By their acts, omissions, customs and/or policies Defendants, and each of them, interfered with and/ attempted to interfere with Mr. Winkler's rights under California Civil Code § 52.1 and Mr. Winkler's right to free from excessive and deadly force, as secured by the California Constitution, Article I, Sections 7 and/or 13.

34.    The Defendant LASD Deputies further violated Mr. Winkler's rights by shooting Mr. Winkler in the absence of any threat presented by Mr. Winkler and without provocation and without justification.   That conduct constituted threats, intimidation or coercion.

35.    The Defendant LASD Deputies' conduct was the proximate and legal cause of Mr. Winkler's death, and thus Plaintiffs are entitled to compensatory and other damages from the Defendant LASD Deputies according to proof at the time of trial.

36.    The Defendant LASD Deputies were acting in the course and scope of their employment as employees of the County of Los Angeles and/or LASD. Accordingly, the County of Los Angeles and the LASD are vicariously liable for the conduct of the Defendant LASD Deputies' which was proximate and legal cause of Mr. Winkler's death, and thus Plaintiffs are entitled to compensatory and other damages from the County of Los Angeles and/or LASD according to proof at the time of trial.

37.    The aforementioned acts and omissions of the Defendant LASD Deputies were committed by each of them knowingly, willfully and/or maliciously, with the

intent to harm, injure, vex, harass and/or oppress Mr. Winkler and/or with a conscious disregard of Mr. Winkler's rights and by reason thereof, Plaintiffs seek punitive and exemplary damages from Defendant LASD Deputies, and each of them, according to proof at the time of trial.

### FOURTH CAUSE OF ACTION
### (Violation of 28 U.S.C. § 1983)
### (Against All Defendants)

38.    Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 15 of this Complaint, and incorporate the same herein by reference.

39.    Based on the facts set forth above in paragraphs 1 through 15, Defendants' acted with deliberate indifference, or they acted with a purpose to harm Mr. Winkler for reasons unrelated to legitimate law enforcement objectives.  As the result of this conduct, plaintiffs Lisa Ostegren and Mark Winkler have suffered the loss of their familial association with their son, John Winkler.

40.    Plaintiffs Lisa Ostegren and Mark Winkler possessed a liberty interest in their familial association with their son, John Winkler.

41.    The unlawful conduct of the Defendants deprived the plaintiffs of their son in violation of their substantive due process rights under the Fourteenth Amendment to the United States Constitution.

42.    The Defendant LASD Deputies had the opportunity to make unhurried judgments regarding the tactics to be used to protect the victims and apprehend the suspect in the subject apartment.  Instead, the Defendant LASD Deputies acted with deliberate indifference to the life of John Winkler by shooting the first two people who ran out the apartment door in an effort to escape their attacker, who remained safely inside, while the Defendant LASD Deputies shot the two victims.

43.    In the alternative, the Plaintiffs allege that the Defendant LASD Deputies acted with a purpose to harm John Winkler that was unrelated to legitimate law enforcement objectives.  The Defendant LASD Deputies shot the first two people who

exited the apartment without consideration as to whether the people were the victims or the attacker.  The Defendant LASD Deputies had one or more photographs of the attacker and had descriptions of the victims.  Instead of actual deliberation before shooting to kill, the Defendant LASD Deputies shot with purpose to harm that was unrelated to the legitimate law enforcement objectives to protect and serve.

44.     The Defendant LASD Deputies acted, or purported to act, in the performance of their official duties.

45.     Defendants LASD and/or COLA failed to adequately train and/or supervise the Defendant LASD Deputies and that failure to train  and/or supervise amounted to a deliberate indifference to the rights of persons with whom the Defendant LASD Deputies come into contact.  The failure to train and/or supervise amounts to a de facto custom, practice or policy of LASD and/or COLA allowing deputies to use excessive force.

46.     The Defendant LASD Deputies' conduct was a proximate and legal cause of Mr. Winkler's death and the violation of Plaintiffs' constitutional rights.

47.     Defendants LASD and/or COLA's failure to train was a moving force and cause behind the violation of Plaintiffs' constitutional rights and Mr. Winkler's death.

48.     Plaintiffs are entitled to damages for the loss of their familial association with their son, John Winkler, as the result of Defendants' violations of their constitutional rights.

49.     The aforementioned acts and omissions of the Defendant LASD Deputies were committed by each of them knowingly, willfully and/or maliciously, with the intent to harm, injure, vex, harass and/or oppress Plaintiffs and/or with a conscious disregard of Mr. Winkler's and Plaintiffs' rights and by reason thereof, Plaintiffs seek punitive and exemplary damages from Defendant LASD Deputies, and each of them, according to proof at the time of trial.

## **PRAYER**

WHEREFORE, Plaintiffs pray for judgment as follows:

<u>On all Causes of Action</u>

(a)   Damages according to proof at the time of trial;

(b)   Punitive damages against each of the Defendant LASD Deputies in an amount sufficient to punish and to make an example of each said Defendant, and to deter others from engaging in similar conduct, but not against Defendants County of Los Angeles or the Los Angeles Sheriff's Department.

(c)   Prejudgment and post-judgment interest;

(d)   Attorneys' fees;

(e)   Costs of suit necessarily incurred herein;

(f)   For such other and further relief as the Court deems just or proper.


Dated:  December 9, 2014                    EAGAN AVENATTI, LLP


                                      By:  _____/s/ Michael J. Avenatti_____
                                            Michael J. Avenatti
                                            Attorneys for Plaintiffs


## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by Jury on all causes of action so triable.


Dated:  December 9, 2014                    EAGAN AVENATTI, LLP


                                      By:  _____/s/ Michael J. Avenatti_____
                                            Michael J. Avenatti
                                            Attorneys for Plaintiff

**COMPLAINT**